## A09A1608. MARTINEZ v. THE STATE.
### (692 SE2d 737)

BERNES, Judge.

Following a jury trial, Luis A. Martinez was convicted of trafficking in cocaine, OCGA § 16-13-31 (a) (1). On appeal, he challenges the sufficiency of the evidence to sustain his conviction and contends that the trial court erred in failing to instruct the jury on the principle of circumstantial evidence set forth in OCGA § 24-4-6. We conclude that the evidence was sufficient to sustain the conviction, but that the trial court's failure to give the circumstantial evidence charge constituted reversible error.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant is no longer entitled to a presumption of innocence. See *Davis v. State*, 285 Ga. App. 315 (645 SE2d 753) (2007). We neither weigh the evidence nor judge the credibility of witnesses, but determine only the sufficiency of the evidence in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See id.

So viewed, the evidence presented at trial shows that on the evening of February 6, 2004, an undercover deputy with the Lee County Sheriff's Office received information from a confidential informant that a kilo of cocaine could be purchased from an

---

[13] (Citation and punctuation omitted.) Id.

individual named "Joe." While in the deputy's presence, the informant contacted Jose Martinez, also known as "Joe," and asked about purchasing "a whole one," a slang term for one kilo of cocaine. After Jose told the informant the sales prices for the drug transaction would be $21,500, the informant told Jose that he would get back with him in the morning. The deputy and the informant then discussed arrangements for consummating the transaction.

On the following morning, the deputy and the informant met again at the sheriff's office, and the informant placed another call to Jose. The informant and Jose agreed to meet in the parking lot of a store located in Lee County. The deputy traveled with the informant to the parking lot and set up surveillance in the area with the assistance of other officers.

Later that morning, Jose contacted the informant and obtained driving directions to the parking lot. Jose called the informant again and they discussed the plans for the drug transaction. According to the informant, a vehicle would pull up beside the deputy's vehicle, the deputy was to then give the money to Jose after which the drugs would be transferred through the car windows. Minutes later, Jose called the informant a third time to advise that he was with his brother, Luis Martinez, and that Gerardo Marquez, also known as "Lalo," was following them. The informant advised the deputy that the Martinez brothers would be driving a brown Ford Expedition sports utility vehicle ("SUV"), that Marquez would likely be driving a white vehicle belonging to Jose's wife, and that the drugs would be in the vehicle driven by Marquez.

Shortly thereafter, a brown Ford Expedition SUV and a white Ford Mustang entered the store parking lot. Luis was driving the brown SUV. Jose was seated in the front passenger seat. Marquez was driving the white vehicle that trailed behind them. The officers did not see any other vehicles matching the informant's descriptions in the area. As the officers continued to watch the vehicles, Luis "circled around [the parking lot] . . . as if [he was] conducting surveillance." Luis drove his vehicle directly in front of a patrol vehicle occupied by an undercover officer. Although the patrol vehicle was unmarked, its windows were clear and the officer was wearing a badge and a bulletproof vest that had "Sheriff's Office" visibly inscribed across its front. Luis looked directly at the officer, observed his badge, and then accelerated his vehicle, rapidly progressing toward the parking lot exit. Marquez also fled in the vehicle he was driving.

Following a brief pursuit, the officers stopped the vehicles and Luis, Jose, and Marquez were apprehended. The officers searched the white vehicle driven by Marquez and recovered a bag of cocaine and two cell phones that were in plain view on the front passenger

seat. Approximately $700 in United States currency was recovered from Marquez's person. The officers recovered two cell phones and $2,165.25 in United States currency from the brown SUV driven by Luis. No drugs were found in the brown SUV.

The investigating deputy later reviewed the call logs from the recovered cell phones. The call logs reflected the multiple calls that Jose had exchanged with the informant and Marquez during the time period in which the drug transaction was arranged.

Scientific testing of the cocaine seized by the officers showed that it weighed 996 grams and contained cocaine of 69.9 percent purity.

Luis, Jose, and Marquez were jointly charged with the offense of trafficking in cocaine. Marquez entered a guilty plea to the offense and testified as a state's witness at trial. According to Marquez, Jose had coordinated the drug transaction and had paid him $500 to participate by driving the white vehicle. Marquez further testified that he did not know Luis, had not spoken to him, and did not know whether he was involved in the transaction.

Following the presentation of above evidence at trial, the jury entered a verdict finding both Luis and Jose guilty of the cocaine trafficking offense. Luis contends that although the evidence established the guilt of his brother Jose, there was no evidence establishing that he was a party to the offense. We disagree.

OCGA § 16-13-31 (a) (1) provides that "[a]ny person . . . who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . commits the felony offense of trafficking in cocaine[.]" A defendant's joint constructive possession of contraband with another will sustain a conviction. See *Waters v. State*, 280 Ga. App. 566, 567 (634 SE2d 508) (2006); *Uriostegui v. State*, 269 Ga. App. 51, 53 (603 SE2d 478) (2004); *Warren v. State*, 254 Ga. App. 52, 54 (1) (561 SE2d 190) (2002). Moreover,

> [o]ne who intentionally aids or abets in the commission of a crime is a party to it. OCGA § 16-2-20 (b) (3). It is true mere presence at the scene of a crime, even coupled with knowledge and approval, is insufficient to convict one of being a party. However, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. A person will not be presumed to act with criminal intention[,] but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. If the totality of circum-

stantial evidence is sufficient to connect the defendant with the possession of the drugs, the conviction will be sustained, even though there is evidence to authorize a contrary finding.

(Punctuation and footnotes omitted.) *Brown v. State*, 245 Ga. App. 706, 708 (1) (538 SE2d 788) (2000). See also *McKenzie v. State*, 283 Ga. App. 555, 558-560 (642 SE2d 187) (2007); *Uriostegui*, 269 Ga. App. at 53; *Cody v. State*, 222 Ga. App. 468, 470 (1) (474 SE2d 669) (1996). And "where transactions involving relatives are under review, slight circumstances are often sufficient to induce a belief that there was collusion between the parties." (Punctuation and footnote omitted.) *Brown*, 245 Ga. App. at 708 (1). See also *Warren*, 254 Ga. App. at 54-55 (1).

Here, the trial evidence established that Luis actively participated with his brother, Jose, and Marquez in the commission of the drug offense. Luis had been present in the vehicle during Jose's cell phone discussions with the informant regarding the logistics of exchanging the money for the drugs. Luis drove Jose to the prearranged location in the store parking lot at the time designated for the drug transaction. In accordance with the plan, Luis and Jose were accompanied by Marquez, who was transporting the drugs. Upon arrival at the scene, Luis drove around the parking lot in a suspicious manner as if he was conducting surveillance of the area. When he encountered and recognized the presence of an officer, Luis quickly fled from the scene. Based upon Luis's conduct and the surrounding circumstances, the jury was authorized to find that he was not merely present at the scene, but was rather in constructive possession of the cocaine based on his guilt as a party to the crime.[1] See OCGA § 16-13-31 (a) (1); *Uriostegui*, 269 Ga. App. at 52-53; *Granados v. State*, 244 Ga. App. 153, 153-154 (1) (534 SE2d 886) (2000); *Cody*, 222 Ga. App. at 470 (1); *Villa v. State*, 190 Ga. App. 530, 533 (5) (379 SE2d 417) (1989). It is the jury's role to resolve evidentiary conflicts, determine witness credibility, and decide the reasonableness of hypotheses based upon the circumstantial evidence. See *McKenzie*, 283 Ga. App. at 559. Because the circumstan-

---

[1] In support of his claim that his drug conviction must be reversed, Luis cites to authorities such as *Benitez v. State*, 295 Ga. App. 658, 659-661 (1) (673 SE2d 46) (2009); *Brown v. State*, 285 Ga. App. 330, 331-333 (646 SE2d 273) (2007); *Turner v. State*, 276 Ga. App. 381, 382-384 (623 SE2d 216) (2005); and *Crenshaw v. State*, 183 Ga. App. 527, 527-529 (1) (359 SE2d 419) (1987). We are unpersuaded. In those cases, the trial evidence failed to establish that the defendants actively participated, aided or abetted in the commission of the drug offenses. Here, however, Luis's conduct, the circumstances presented, and the reasonable inferences to be drawn therefrom authorized the jury's conclusion that Luis actively participated as a party to the drug trafficking offense.

tial evidence in this case was sufficient to establish that Luis was a party to the crime, reversal on this ground is not warranted.

2. Luis further contends that the trial court erred in failing to give a jury instruction on the principle of circumstantial evidence, set forth in OCGA § 24-4-6, as follows: "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Luis did not request a charge on this principle, and the trial court did not give any charge covering the issue sua sponte. Based upon the facts of this case, however, we agree that the trial court committed reversible error.

"A trial court must charge on the law of circumstantial evidence, OCGA § 24-4-6, *even absent a request*[,] if the case against the defendant is wholly circumstantial[.]" (Citation and punctuation omitted; emphasis supplied.) *Davis v. State*, 285 Ga. 176, 180 (2) (674 SE2d 879) (2009). See also *Stephens v. State*, 208 Ga. App. 291, 293 (4) (430 SE2d 29) (1993). When the trial court fails to do so and the defendant's guilt of the offense is not otherwise established by overwhelming evidence, reversal is required. See *Davis*, 285 Ga. at 180 (2); *Stephens*, 208 Ga. App. at 293 (4).

Here, the evidence against Luis was entirely circumstantial and therefore, the trial court's failure to give a jury charge covering the principle of circumstantial evidence was erroneous. While we have concluded in Division 1 that the circumstantial evidence was sufficient to authorize Luis's conviction, we cannot say that the evidence of his guilt was overwhelming.[2] Consequently, the trial court's failure to charge on circumstantial evidence requires reversal. See *Davis*, 285 Ga. at 180 (2); *Stephens*, 208 Ga. App. at 293 (4).

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 24, 2010.

*Timothy L. Eidson*, for appellant.
*Plez H. Hardin, District Attorney, Daniel P. Bibler, Assistant District Attorney*, for appellee.

---

[2] As argued by Luis, there was no direct evidence that he engaged in the discussions between the informant, Jose, and Marquez; he did not have actual possession of the drugs; and Marquez testified that he did not know whether Luis was involved in the drug transaction.