## A11A0430. VALDEZ v. THE STATE.
### (712 SE2d 656)

MILLER, Presiding Judge.

Following a jury trial, Carlos Valdez was convicted of trafficking in cocaine (OCGA § 16-13-31 (a) (1)). The trial court denied Valdez's motion for new trial, as amended. On appeal, Valdez contends that (i) the evidence was insufficient to sustain his conviction and (ii) the trial court abused its discretion in failing to excuse a prospective juror. We discern no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant is no longer entitled to a presumption of innocence. We neither weigh the evidence nor judge the credibil-

---

ity of witnesses, but determine only the sufficiency of the evidence in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(Citation omitted.) *Martinez v. State*, 303 Ga. App. 71 (1) (692 SE2d 737) (2010). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Navarro v. State*, 293 Ga. App. 329 (667 SE2d 125) (2008).

So viewed, the trial evidence shows that in December 2007, deputies in the Multi-Agency Narcotics Squad ("MANS") of the Cherokee County Sheriff's Office received information that a confidential informant was willing to assist in an undercover operation to purchase an ounce of cocaine. The deputies met with the informant, who made arrangements to meet the drug suspects at a designated location. The deputies established an action plan and wired the principal agent with a concealed electronic transmitting device. Thereafter, the deputies traveled to the designated location.

Upon arriving, the deputies observed a vehicle parked at the location. Valdez was the driver of the vehicle and his co-defendant, Honorato Ortiz-Hernandez, occupied the back passenger seat. Valdez's other co-defendant, Eduardo Garcia Castaneda, stood outside the vehicle and used his cell phone to communicate with the informant and the principal agent.

The informant and the principal agent approached Castaneda to consummate the transaction. Upon observing them, Valdez identified the principal agent as a police officer and warned his co-defendants. Castaneda refused to complete the transaction with the principal agent. As a result, the principal agent backed away, gave $850 in MANS official funds to the informant for use in the transaction, and stood in front of the vehicle while continuing to observe the transaction.

Castaneda then entered the front passenger side of the vehicle, obtained a bag from co-defendant Hernandez, and handed the bag to the informant. In exchange, the informant gave Castaneda the MANS official funds. Castaneda handed the funds to Valdez. After the transaction was completed, the principal agent gave a takedown signal, prompting the deputies to rush in and arrest Valdez, Castaneda, and Hernandez.

Following the arrests, the deputies recovered the MANS official funds from the center console of the vehicle. The bag that was delivered during the transaction was submitted to the State Crime Lab for testing. The test results revealed that the substance in the

bag was cocaine, weighing approximately 28.27 grams with a purity of approximately 36.1 percent.

After being read their *Miranda* rights, Valdez, Castaneda, and Hernandez agreed to be interviewed by the deputies. Valdez claimed that he had driven to the location to purchase cigarettes at a nearby store. However, the deputies did not find any cigarettes during their search of the vehicle. As the interview progressed, Valdez described the drug transaction and further admitted that he had taken the MANS official funds from Castaneda during the consummation of the transaction.

Valdez, Castaneda, and Hernandez were jointly charged with trafficking in cocaine. Castaneda entered a guilty plea and testified as a State's witness at the joint trial of Valdez and Hernandez. He testified that he and his co-defendants knew that they would be engaging in a drug transaction when they arrived at the location. He stated that they were parked at the location for seven to ten minutes, waiting for the informant to arrive for the transaction. He further conceded that he had engaged in the drug exchange with the informant.

1. Valdez contends that the evidence, as set forth above, was insufficient to sustain his conviction of the drug trafficking offense. He argues that there was no evidence that he had possession of the cocaine and the circumstantial evidence failed to exclude every other reasonable hypothesis save that of his guilt. We disagree.

A person commits the offense of trafficking in cocaine when he "knowingly sells, manufactures, delivers, or brings into this state or . . . is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine[.]" OCGA § 16-13-31 (a) (1). "Under Georgia law, the possession required for a conviction for drug trafficking does not mean that the defendant had to be holding the contraband in his hand or have it physically on his person." (Citation and punctuation omitted.) *Navarro*, supra, 293 Ga. App. at 331. Rather, "[a] defendant's joint constructive possession of contraband with another will sustain a conviction." (Citations omitted.) *Martinez*, supra, 303 Ga. App. at 73 (1).

Moreover, a person who intentionally aids or abets in the commission of a crime is a party thereto and may be charged with and convicted of the crime. See OCGA § 16-2-20 (a), (b) (3); *Navarro*, supra, 293 Ga. App. at 331.

> It is true mere presence at the scene of a crime, even coupled with knowledge and approval, is insufficient to convict one of being a party. However, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be

inferred. A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. If the totality of circumstantial evidence is sufficient to connect the defendant with the possession of the drugs, the conviction will be sustained, even though there is evidence to authorize a contrary finding.

(Citations and punctuation omitted.) *Martinez*, supra, 303 Ga. App. at 73-74 (1).

Here, the evidence showed that Valdez participated and intentionally aided in the commission of the drug trafficking offense by driving his co-defendants and the cocaine to the pre-arranged location for the transaction, warning his co-defendants that the principal agent was a police officer, and taking possession of the funds used for the transaction. Contrary to Valdez's assertion that he was merely present at the scene and had no intent to participate in the crime, his co-defendant testified that they knew that they were at the location to engage in a drug transaction and that they had waited for the informant to arrive at the location so that the transaction could occur. Based upon this evidence reflecting Valdez's actions and the totality of the circumstances of the transaction, the jury was authorized to find that Valdez was in joint constructive possession of the cocaine and was a party to the crime. See *Martinez*, supra, 303 Ga. App. at 74-75 (1); *Navarro*, supra, 293 Ga. App. at 331-332.

Valdez nevertheless points to conflicting evidence and contends that the circumstantial evidence failed to exclude every other reasonable hypothesis save that of his guilt, as required by OCGA § 24-4-6. His contentions are unavailing. "It is the jury's role to resolve evidentiary conflicts, determine witness credibility, and decide the reasonableness of hypotheses based upon the circumstantial evidence." (Citation omitted.) *Martinez*, supra, 303 Ga. App. at 74 (1).

Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

(Citations and punctuation omitted.) *Wright v. State*, 302 Ga. App. 332, 333 (690 SE2d 654) (2010). The trial evidence, as set forth

above, authorized the jury to find that the only reasonable hypothesis pointed to Valdez's guilt of the drug offense.

2. Valdez further contends that the trial court erred in failing to excuse a prospective juror on the basis of his alleged bias. Again, we discern no error.

As an initial matter, the record shows that the voir dire of the prospective jurors was not fully transcribed. Significantly, the individual examination and responses of the prospective jurors is not reflected in the record.[1] Our review is limited to the available portions of the transcript that set forth the challenge raised to the prospective juror at issue, the arguments of counsel, and the trial court's ruling as to the challenge.

The record shows that following voir dire, defense counsel raised a challenge to a prospective juror, whose son was an agent involved in the undercover operation and was a trial witness for the State. Counsel asserted that the potential juror had expressed that he would believe his son over other witnesses in the case. The State argued that notwithstanding the prospective juror's initial response, his further responses reflected that he could listen to the evidence and be impartial in deciding the case. The trial court denied the defense challenge, recalling the voir dire responses and finding that the prospective juror had emphatically stated that he could be objective. Since his challenge was unsuccessful, Valdez exercised a peremptory strike to excuse the juror.

"[T]he decision to strike a juror for cause lies within the sound discretion of the trial court." (Citations and punctuation omitted.) *Croom v. State*, 217 Ga. App. 596, 598 (2) (458 SE2d 679) (1995). Valdez acknowledges that the prospective juror was not subject to disqualification for principal cause under OCGA § 15-12-163 (b) (4) since the deputy was not the prosecutor in the case, but was merely one of the officers involved in the undercover operation.[2] He nevertheless contends that in light of the familial connection and the expressed belief in his son's veracity, the prospective juror should have been excused. Notwithstanding his contentions, no abuse of the

---

[1] We note that since an appellant carries the burden of showing error by the record, he must have voir dire transcribed if he seeks to raise issues related to voir dire on appeal. See *Bryant v. State*, 270 Ga. 266, 271, n. 18 (507 SE2d 451) (1998).

[2] OCGA § 15-12-163 (b) (4) provides that a prospective juror may be challenged for cause when "the juror is so near of kin to the prosecutor, the accused, or the victim as to disqualify the juror by law from serving on the jury[.]" A prosecutor is defined as "one who instigates a prosecution by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued or an indictment or accusation is based." (Citations and punctuation omitted.) *Spence v. State*, 238 Ga. 399, 400 (233 SE2d 363) (1977). The fact that one is heavily involved in the transaction out of which the prosecution flows does not render him as the "prosecutor." Id. It is undisputed that the deputy was not the principal agent or the prosecutor in the case.

trial court's discretion has been shown.

"Relationship to a witness is not *per se* a ground for excusing a prospective juror." (Citations and punctuation omitted.) *Croom*, supra, 217 Ga. App. at 598 (2). See also *Spence v. State*, 238 Ga. 399, 400 (233 SE2d 363) (1977) (concluding that no reversible error occurred where the jury foreman was the father of the officer who investigated the case for the State and appeared as one of the State's chief witnesses). As such, the familial relationship between the prospective juror and the deputy involved in the case did not mandate that the juror be excused. Id.

Moreover, "before a juror can be disqualified for cause, it must be shown that an opinion held by the [prospective] juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." (Citations and punctuation omitted.) *Croom*, supra, 217 Ga. App. at 598 (2). The trial court determined that the prospective juror did not hold a fixed and definite opinion and that he was capable of being impartial and objective in deciding the case. On appeal, we must deem the trial court's ruling in this regard as proper absent some manifest abuse of discretion. See *Taylor v. State*, 243 Ga. 222, 224 (2) (253 SE2d 191) (1979). In the absence of a full transcript setting forth the prospective juror's specific voir dire responses, we cannot say that the trial court abused its discretion in its finding. Accordingly, this claim of error fails. See *Croom*, supra, 217 Ga. App. at 598 (2); *Jones v. State*, 184 Ga. App. 4, 6-7 (2) (360 SE2d 599) (1987) (concluding that "[a]lthough the juror's first response to the [voir dire] questions . . . indicated a possible bias or prejudice on her part, the juror's opinion was not shown to be so fixed and definite that it would not be changed by the evidence or charge of the court upon the trial of the case.") (citations and punctuation omitted).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED JUNE 23, 2011.

*H. Maddox Kilgore*, for appellant.
*Garry T. Moss, District Attorney, Cliff Head, Lawton W. Scott, Assistant District Attorneys*, for appellee.